DISTRICT COURT OF GUAM

| | |
|---|---|
| RICHARD T. ARNOLD,<br><br>Plaintiff,<br><br>vs.<br><br>MANU P. MELWANI, ANITA MELWANI, LAWRENCE J. TEKER, THE SUPERIOR COURT OF GUAM, THE SUPREME COURT OF GUAM, and ROBERT P. KUTZ,<br><br>Defendants. | Civil Case No. 09-00030<br><br>**OPINION AND ORDER**<br>**RE: MOTIONS TO DISMISS** |

This matter comes before the court on motions to dismiss filed by the Defendants Manu P. Melwani, Anita Melwani, Lawrence J. Teker and Robert P. Kutz ("the Melwani Defendants") and the Superior Court of Guam and Supreme Court of Guam ("the Judiciary"). *See* Docket Nos. 18 and 37. The Melwani Defendants contend, *inter alia*, that this court lacks diversity jurisdiction, while the Judiciary argues, *inter alia*, that it enjoys absolute judicial immunity from this suit. *See* Docket Nos. 18 and 37.

This court finds that dismissal of the case is proper because the Plaintiff's claims are subject to dismissal under Federal Civil Procedure Rule 12(b)(6). Moreover, specifically as to Count III, it must be dismissed with prejudice, because the court lacks jurisdiction pursuant to the *Rooker-Feldman* doctrine and the principles of judicial immunity apply.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

At its core, this case is a contract dispute concerning the Plaintiff, president of Pacific Superior Enterprises Corp. ("PSEC"), a local construction company, who had won a bid for the

repair and renovation of Guam Housing and Urban Renewal Authority ("GHURA") residential housing units. *See* Docket No. 19, Exh. A; *GHURA v. Pac. Superior Enters. Corp.*, 2004 Guam 22 ¶ 3. PSEC and Defendant Manu Melwani ("Melwani") entered into a contract, which spawned years of litigation in the Superior Court of Guam and appeals to the Supreme Court of Guam.

Displeased with the rulings of the Superior and Supreme Courts, the Plaintiff filed the instant action in this court, alleging "a fifteen year . . . unconstitutional prejudgment attachment and subsequent release of plaintiff's money to [Melwani]." *See* Docket No. 16, First Amended Complaint. Presumably, the Plaintiff believed that monies were due to him as a result of his successful bid with GHURA and his contract with Melwani. *See id.*

Early into the litigation here, the Plaintiff requested this court's recusal, which was denied. *See* Docket Nos. 25 and 44. The Plaintiff then sought reconsideration of that ruling, which was also denied. *See* Docket Nos. 46 and 58. He appealed the order denying reconsideration to the Ninth Circuit, but his action was dismissed for lack of appellate jurisdiction. *See* Docket Nos. 62 and 69.

## II. DISCUSSION

### A. Federal Civil Rule 12(b)(6)

A pleading that states a claim for relief must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a Defendant to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Although a complaint does not need "detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And although the court "must take all of the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct.

1937, 1950 (2009) (quotation marks omitted). So, to survive a 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570)).

*Iqbal* suggests a two-step process for determining whether a motion to dismiss should be granted. The first step is to "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1950. These are to be discarded. *See id*. After discarding those unsupported legal conclusions, the second step is to take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

As for the meaning of the term "plausibly," "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This standard

> is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief."

*Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. And this standard applies to "all civil actions." *Id*. at 1953.

In short, "a complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949).

In the case at bar, all Plaintiff's claims suffer the same infirmity. Each claim offers "no more than conclusions" and therefore, "are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1950. For example, the Plaintiff alleges in Count I that Melwani conspired with GHURA officials "to deprive him of money that was contractually owed to Plaintiff." Docket No. 16. The other counts reflect the same conclusory language.

///

///

### B. Federal Civil Rule 9(b)

Furthermore, the Plaintiff alleges in Counts I, II and IV that the Defendants committed fraudulent acts. However, under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must plead each of the elements of a fraud claim with particularity—*i.e.*, a plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (italics in original). In other words, fraud claims must be accompanied by the "who, what, when, where, and how" of the fraudulent conduct charged. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient. *Id*.

Finally, "Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct . . . and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089-90 (C.D. Cal. 2009) (citing *Vess*, 317 F.3d at 1102-06).

Here, the Plaintiff fails to allege facts explaining the "what, when, where, and how" of the fraudulent conduct. *See Vess*, 317 F.3d at 1106. Moreover, he fails to identify the circumstances constituting fraud, such that a defendant would be *unable* to prepare an adequate answer from the allegations. *See Moore*, 885 F.2d at 540. Accordingly, Counts I, II, and IV must be dismissed.

### C. *Rooker-Feldman* doctrine

In addition to the challenges to jurisdiction raised by the Defendants' motions, this court also has "an independent duty to examine the propriety of subject matter jurisdiction." *Latman v. Burdette*, 366 F.3d 774, 781 n.2 (9th Cir. 2004); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (stating that "federal courts are under an independent obligation to examine their own jurisdiction."). Although not argued by the parties, the court recognizes that under the

*Rooker-Feldman* doctrine, this court lacks jurisdiction to rule on Count III.

The *Rooker-Feldman* doctrine takes its name from two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "*Rooker-Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). The Supreme Court has stated:

> The *Rooker- Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003), the Ninth Circuit set forth the facts and law in both *Rooker* and *Feldman*, then extensively examined the development of the *Rooker-Feldman* doctrine in the circuit. The court concluded that the decisions in *Rooker* and *Feldman*, and the seven circuit cases interpreting the *Rooker-Feldman* doctrine "fall into a relatively clear pattern: It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Id.* at 1163.

Count III is indisputably a forbidden de facto appeal from the decisions of Guam's Superior and Supreme Courts. Specifically, the Plaintiff alleges that "[b]oth courts have failed to properly rule concerning the contract signed by the plaintiff and [Melwani] and have abused their discretionary powers to delay and deprive plaintiff of his money." Docket No. 16. Clearly, the Plaintiff is asking this court to review the rulings of the courts of Guam. *Rooker-Feldman* bars this court from such review. The Ninth Circuit held:

> We believe that the following general formulation describes the distinctive role of the *Rooker-Feldman* doctrine in our federal system: If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

1   *Id.* at 1164. As noted, the Plaintiff challenges the "allegedly erroneous decision[s]" of Guam's

2   Superior and Supreme Courts, in direct contravention of *Rooker-Feldman* doctrine.

3   Accordingly, Count III requires dismissal with prejudice on these grounds as well.

4       **D.    Judicial Immunity**

5       Additionally, Count III must be dismissed on the basis of judicial immunity.

6   "Anglo-American common law has long recognized judicial immunity, a 'sweeping form of

7   immunity' for acts performed by judges that relate to the 'judicial process.'" *In re Castillo*, 297

8   F.3d 940, 947 (9th Cir. 2002) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988)). Thus,

9   judges who are "functioning in their official capacities" are accorded "[a]bsolute immunity."

10  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (citing *Stump v.

11  Sparkman*, 435 U.S. 349, 364 (1978) (holding that state circuit judge is immune from suit for all

12  actions within his jurisdiction)).

13      In substance, the Plaintiff is unhappy with the decisions of Guam's Superior and

14  Supreme Courts. However, there is nothing in his complaint suggesting that the judges were

15  functioning outside their "official capacities," *Olsen*, 363 F.3d at 922, or were acting outside

16  their jurisdiction. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) ("Judges are immune

17  from damage actions for judicial acts taken within the jurisdiction of their courts."). In fact,

18  "[j]udicial immunity applies 'however erroneous the act may have been, and however injurious

19  in its consequences it may have proved to the plaintiff.'" *Id.* at 1075 (quoting *Cleavinger v.

20  Saxner*, 474 U.S. 193 (1985) (citation omitted)). Accordingly, Count III must be dismissed

21  under principles of judicial immunity.

22  **III.    CONCLUSION**

23      Based on the foregoing, the court hereby **GRANTS** the motions to dismiss (Docket Nos.

24  18 and 37). As to Count I, II and IV, the Plaintiff, as a pro se litigant, shall be given leave to

25  amend. *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir.1992) (stating that "before a

26  district court may dismiss a pro se complaint for failure to state a claim, the court must provide

27  the pro se litigant with notice of the deficiencies of his or her complaint and an opportunity to

28  amend the complaint prior to dismissal.") (overruled on other grounds, *WMX Techs., Inc. v.

*Miller*, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc)).   As to Count III, the court hereby dismisses it with prejudice, and the Plaintiff shall not be given leave to amend, for the reasons stated herein.[1]  The Clerk's Office is directed to issue a judgment in accordance with this Order.

**SO ORDERED.**



/s/ **Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Mar 31, 2011**

---

[1] In light of this court's ruling herein, all pending motions, including the one filed today (Docket No. 91) are hereby considered moot.