# IN THE DISTRICT COURT OF GUAM

RICHARD T. ARNOLD,     )
    )
       Plaintiff,     )
    )
       vs.     )    CV. NO. 09-00030 DAE
    )
MANU P. MELWANI, et al.,     )
    )
       Defendants.     )
_____ )

## ORDER: (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS AND (2) GRANTING JUDICIARY DEFENDANTS' MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT

On October 19, 2012, the Court heard Former Guam Judiciary Defendants' Motion to Dismiss and Motion to Strike Second Amended Complaint (doc. # 133), Former Guam Judiciary Defendants' Motion to Declare Plaintiff a Vexatious Litigant (doc. # 135), and Melwani Defendants' Motion to Dismiss (doc. # 158). Plaintiff Richard T. Arnold appeared pro se on behalf of himself; B. Ann Galey-Keith, Esq., appeared on behalf of the Current Guam Judiciary Defendants; Assistant Attorney General Marianne Woloschuk appeared on behalf of the Former Guam Judiciary Defendants; and Robert Kutz, Esq., appeared on behalf of the Melwani Defendants.

After reviewing the motions and the supporting and opposing

1

memoranda, the Court **GRANTS** the Former Guam Judiciary Defendants' and Current Guam Judiciary Defendants' (collectively, "Judiciary Defendants") Motion to Dismiss; **GRANTS** the Melwani Defendants' Motion to Dismiss; and **GRANTS** the Judiciary Defendants' Motion to Declare Plaintiff a Vexatious Litigant.

BACKGROUND

The instant action arises out of a contract dispute between Plaintiff Richard T. Arnold's ("Plaintiff") construction company, Pacific Superior Enterprises Corp. ("PSEC"), and Defendant Manu P. Melwani ("Melwani") over ownership rights to payment on a renovation project for Guam Housing and Urban Renewal Authority ("GHURA") residential housing units. (See doc. # 19, ex. A.) On June 14, 1996, GHURA filed an interpleader action, CV887-96, against PSEC and Melwani in the Superior Court of Guam to determine ownership rights to money owed by GHURA for the renovation of the housing units. (See "SAC," doc. # 124 at 2.) Melwani filed a crossclaim against PSEC, and PSEC filed a counterclaim and third-party claim. Plaintiff's dispute with Melwani has spurred over a decade of litigation in the Superior Court of Guam and the Supreme Court of Guam.

On December 22, 2009, Plaintiff filed the instant action in federal district court, seeking to recover money related to his dispute with Melwani that he alleged the Superior Court of Guam had withheld from him in a "fourteen year . . .

2

unconstitutional prejudgment attachment." (See doc. # 1 at 1.) Plaintiff filed his

First Amended Complaint ("FAC") on March 11, 2010. (Doc. # 16.) On March

29, 2010, Plaintiff moved for the recusal of Chief Judge Frances Tydingco-

Gatewood, which she denied. (See docs. ## 25, 44.) Plaintiff then sought

reconsideration of that ruling, which Judge Tydingco-Gatewood also denied.

(Docs. ## 46, 58.) Plaintiff then appealed the order denying reconsideration to the

Ninth Circuit, but the action was dismissed for lack of appellate jurisdiction. (See

docs. ## 62, 69.)

On March 31, 2011, the Court dismissed the FAC pursuant to Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. # 92.)

However, in light of Plaintiff's pro se status, the Court granted Plaintiff leave to

amend as to Counts I, II and IV of the FAC. (See id. at 6.) The Court dismissed

Count III—in which Plaintiff challenged the legality of certain decisions of the

Superior and Supreme Courts of Guam—with prejudice based on the Rooker-

Feldman doctrine and judicial immunity. (See id. at 7.) The Court then entered

judgment as to Count III on March 31, 2011. (See doc. # 93.)

The Melwani Defendants[1] filed a Motion to Amend Judgment on

---

[1] The Melwani Defendants include Manu P. Melwani, Anita Melwani,
Lawrence Melwani, J. Teker, and Robert P. Kutz.

April 14, 2011, asking that the Court dismiss the entirety of the FAC with prejudice. (Doc. # 95.) Shortly thereafter, on April 27, 2011, Plaintiff filed three motions. First, Plaintiff filed a Motion for Reconsideration of the Court's prior March 31, 2011 Order dismissing Count III of the FAC with prejudice. (Doc. # 98.) Second, Plaintiff filed a Motion to Vacate an August 14, 2000 decision of the Superior Court of Guam granting partial summary judgment and the final judgment entered in favor of Defendant Melwani on May 8, 2001. (Doc. # 99.) Third, Plaintiff filed a Motion to Vacate the judgment of the Superior Court of Guam in Special Proceedings Case No. 0057-07. (Doc. # 100.) Approximately one week later, Plaintiff filed a fourth motion, a Notice of a Constitutional Question, challenging the constitutionality of District of Guam Local Civil Rule 7.1. (Doc. # 101.)

On August 31, 2011, the Court issued an order denying the Melwani Defendants' Motion to Amend Judgment (doc. # 95) and also denying all four of Plaintiff's motions (docs. ## 98–101). (Doc. # 112.)

On October 14, 2011, Plaintiff filed a second Motion for Reconsideration of the Court's March 31, 2011 Order dismissing Count III with prejudice. (Doc. # 114.) The motion also asked for reconsideration of the Court's dismissal of Plaintiff's constitutional question in its August 31, 2011 Order. (Id.)

On January 20, 2012, the Melwani Defendants filed an Opposition to the Motion for Reconsideration.  (Doc. # 120.)  On January 24, 2012, Plaintiff filed a Reply to Melwani Defendants' Opposition.  (Doc. # 122.)

On January 27, 2012, Plaintiff filed a Motion for Reconsideration of the Court's August 31, 2011 Order denying his Motion for Reconsideration as to the Court's dismissal of Count III of the FAC with prejudice (doc. # 98) and denying Plaintiff's two Motions to Vacate various judgments of the Superior and Supreme Courts of Guam (docs. ## 99, 100).  (Doc. # 123.)

On February 10, 2012, Plaintiff filed the present Second Amended Complaint ("SAC").[2]  (Doc. # 124.)  On June 11, 2012, Plaintiff filed a Motion for Extension of Time to Serve Summonses and Second Amended Complaint and Motion for Order to Have U.S. Marshall's [sic] Service to Serve Same. (Doc. # 131.)  On June 13, 2012, a group of defendants comprised of current sitting members of the Guam judiciary[3] ("Current Guam Judiciary Defendants") filed an Opposition to Plaintiff's Motion for Extension of Time (Doc. # 138).  On June 14,

_____

[2]Chief Judge Tydingco-Gatewood recused herself from the case on March 28, 2012, because the SAC named her as a defendant.  (Doc. # 126.)

[3] The group includes Chief Justice F. Phillip Carbullido, Associate Justice Robert J. Torres, Associate Justice Katherine A. Maraman, Judge Richard Benson, CNMI Supreme Court Associate Justice John Manglona, and Superior Court of Guam Judge Michael J. Bordallo.

5

2012, a group of defendants made up of former members of the Guam judiciary ("Former Guam Judiciary Defendants")[4] joined the Opposition (doc. # 139).

On June 12, 2012, the Former Guam Judiciary Defendants filed the present Motion to Dismiss and a Motion to Strike the SAC ("Former Guam Judiciary Defendants' Motion to Dismiss"). (Doc. # 133.) The Former Guam Judiciary Defendants also filed a Motion to Declare Plaintiff a Vexatious Litigant ("Vexatious Litigant Motion") the following day, on June 13, 2012. (Doc. # 135.) The Current Guam Judiciary Defendants substantively joined both motions. (See docs. ## 136–137.) On June 27, 2012, Plaintiff filed an Opposition to the Former Guam Judiciary Defendants' Motion to Dismiss (doc. # 144) and an Opposition to the Vexatious Litigant Motion (doc. # 145). On July 5, 2012, the Former Guam Judiciary Defendants filed a Reply regarding their Motion to Dismiss (doc. # 147) and a Reply regarding their Vexatious Litigant Motion (doc. # 148).

On August 7, 2012, the Melwani Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint ("Melwani Defendants' Motion to Dismiss"). (Doc. # 159.) On August 21, 2012, Plaintiff filed an Opposition to the Melwani Defendants' Motion to Dismiss. (Doc. # 162.) The Melwani Defendants

---

[4] The group includes Benjamin Cruz, Frances Tydingco-Gatewood, Joaquin Manibusan, Peter Siguenza, and Mitchell Thompson.

6

did not file a Reply.

Finally, on August 31, 2012, Plaintiff filed a Motion to Vacate the Court's August 31, 2011 Order. (Doc. # 164.) On September 14, 2012, the former and current members of the Guam judiciary filed Oppositions to Plaintiff's Motion to Vacate (docs. ## 166, 167), which the Melwani Defendants joined on September 18, 2012. (Doc. # 168.)

On September 20, 2012, the Court issued an Order (1) Denying Plaintiff's Motions for Reconsideration (docs. ## 114, 123) and (2) Denying Plaintiff's Motion to Vacate (doc. # 164).

On October 16, 2012, three days before the Court's scheduled hearing on the Guam Judiciary Defendants' and Melwani Defendants' motions, Plaintiff filed a Notice of Appeal as to the Court's September 20, 2012 order (doc. # 179) and a Motion to Stay Proceedings Pending Appeal (doc. # 180). The Court denied Plaintiff's Motion to Stay.[5] (Doc. # 181.) On November 8, 2012, the Ninth Circuit Court of Appeals dismissed Plaintiff's appeal for lack of jurisdiction.

---

[5] Because of severe time limitations and travel necessities of the Court and counsel, the Court issued a brief order denying Plaintiff's motion and stated that it would provide a reasoned order at a later time. Because the Ninth Circuit subsequently dismissed Plaintiff's appeal for lack of jurisdiction, see supra, this Court need not provide further reasoning for denying Plaintiff's motion.

7

(Doc. # 188.)

        The Court held a hearing on the Guam Judiciary Defendants' and Melwani Defendants' motions on October 19, 2012. The Court directed the Judiciary Defendants to file relevant portions of the record in the Superior Court of Guam and the Supreme Court of Guam and allowed Plaintiff to file additional relevant case law no later than October 26, 2012. On October 19, 2012, the Former Guam Judiciary Defendants filed a Supplement to the Motion to Dismiss. (Doc. # 183.) On October 29, 2012, Plaintiff filed an Affidavit and Supporting Documents Concerning SP0057-07 and a Motion for Extension of Time to File Supporting Documents in Opposition to Motion to Dismiss. (Docs. ## 186, 187.) On November 8, 2012, the Court granted Plaintiff's Motion for an Extension of Time. (Doc. # 189.) On November 27, 2012, Plaintiff filed a Notice of Intent to File Motion for Partial Summary Judgment (doc. # 190); and on January 3, 2013, Plaintiff filed a Notification and Certificate of Service indicating that he planned to move for partial summary judgment on or before January 15, 2013.

STANDARD OF REVIEW

I.     Federal Rule of Civil Procedure 12(b)(1)

        A federal court may dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The court may

8

determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case." Kingman Reef Atoll Invs., L.L.C. v. United States, 541 F.3d 1189, 1195 (9th Cir. 2008).

"[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction. Americopters, LLC v.. Fed. Aviation Admin., 441 F.3d 726, 732 n. 4 (9th Cir. 2006); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ( "If subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the disputes on [his or] her own."). Accordingly, the court may use affidavits and other forms of competent evidence offered by the parties in order to resolve the disputed jurisdictional issues without converting the motion to dismiss into one for summary judgment. See United States ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n. 2 (9th Cir. 2009); Safe Air for Everyone, 373 F.3d at 1039; McCarthy v. United States, 850 F.2d 558, 560 (9th Cir.1988). "'Once the moving party has converted the motion to dismiss into a factual motion by

9

presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" <u>Safe Air for Everyone</u>, 373 F.3d at 1039 (quoting <u>Savage v. Glendale Union High Sch</u>., 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

When, as here, subject matter jurisdiction is challenged in a motion to dismiss, the plaintiff has the burden of proving jurisdiction. <u>Kingman Reef</u>, 541 F.3d at 1197; <u>Tosco Corp. v. Cmtys. for a Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001); <u>see also</u> <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]") (citations and quotation marks omitted)).

II.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint and matters properly subject to judicial notice. <u>See</u> <u>Colony Cove Properties, LLC v. City of Carson</u>, 640 F.3d 948, 955 (9th Cir. 2011). A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a

10

cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."
Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)
(citation omitted). Allegations of fact in the complaint must be taken as true and
construed in the light most favorable to the plaintiff. See Livid Holdings Ltd. v.
Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6)
motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).
In providing grounds for relief, however, a plaintiff must do more than recite the
formulaic elements of a cause of action. See id. at 556–57; see also McGlinchy v.
Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations
without more are insufficient to defeat a motion to dismiss for failure to state a
claim.") (citation omitted). "The tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal conclusions," and
courts "are not bound to accept as true a legal conclusion couched as a factual
allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations and
citations omitted). Thus, "bare assertions amounting to nothing more than a
formulaic recitation of the elements" of a claim "are not entitled to an assumption
of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he
non-conclusory 'factual content,' and reasonable inferences from that content,

11

must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.   See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

III.    Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be

12

dismissed <u>sua sponte</u> for failure to satisfy Rule 8. <u>Hearns v. San Bernardino Police</u> <u>Dep't</u>, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting <u>Gillibeau v. City of</u> <u>Richmond</u>, 417 F.2d 426, 431 (9th Cir. 1969); <u>see also</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but . . . prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); <u>Nevijel v. N. Coast Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a complaint may be dismissed for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed. <u>See</u> <u>McHenry</u>, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); <u>cf.</u> <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than

13

"the-defendant-unlawfully-harmed-me accusation[s]." Iqbal, 556 U.S. at 678 (internal quotations omitted). Further, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (internal quotations omitted). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." McHenry, 84 F.3d at 1179.

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S at 679. Legal conclusions must be supported by factual allegations. Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

## IV. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Ninth Circuit law, "Rule 9(b)

14

requires particularized allegations of the circumstances <u>constituting</u> fraud." <u>In re</u>

<u>GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc),

<u>superseded on other grounds by</u> 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature

of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to

satisfy this requirement. <u>Id.</u> at 1548 (quoting <u>Moore v. Kayport Package Express,</u>

<u>Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989)). "[T]he circumstances constituting the

alleged fraud [must] 'be specific enough to give defendants notice of the particular

misconduct . . . so that they can defend against the charge and not just deny that

they have done anything wrong.'" <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124

(9th Cir. 2009) (quoting <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir.

2001)); <u>see also</u> <u>Moore</u>, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff

to attribute particular fraudulent statements or acts to individual defendants).

However, "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b); <u>see also</u> <u>In re GlenFed, Inc. Sec.</u>

<u>Litig.</u>, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply

by saying that scienter existed."); <u>Walling v. Beverly Enter.</u>, 476 F.2d 393, 397

(9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the

15

circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## DISCUSSION

### I. Former and Current Guam Judiciary Defendants' Motion to Dismiss

Plaintiff defines the case as a "17-year saga wherein the Superior and Supreme Courts of Guam have deprived Arnold of his life's savings by purposely issuing void judgments for the benefit of Melwani and GHURA." (SAC at 2.) The SAC lists ten counts that largely criticize the decisions of the Superior and Supreme Courts of Guam; his claims are somewhat difficult to discern. At the hearing, Plaintiff stated that he is asserting claims under 28 U.S.C. § 1983 and 28

16

U.S.C. § 1343.[6]  The SAC largely makes references to constitutional violations,

such as violations of due process.[7]  The instant action appears to arise from two

cases originating in the Superior Court of Guam: (1) the interpleader action filed

by GHURA against PSEC and Melwani to determine the ownership rights to

$411,978.15, the amount due on certain construction contracts; and (2) a judgment

in a Special Proceedings Case confirming an arbitrator's award in favor of

Melwani.

        In Count I, entitled "The Superior Court Had No Right to Institute the

Interpleader," Plaintiff alleges that former Superior Court Judge Cruz denied

Plaintiff due process of law by denying PSEC's Motion for Partial Summary

Judgment "without comment" and releasing GHURA from the interpleader.  (SAC

at 12–13.)  According to the Plaintiff, GHURA subsequently deposited with the

Superior Court PSEC's "contractually due funds of $411,978.15," and Judge Cruz

"had no right to take PSEC's money and ignore PSEC's Motion for Partial

Summary Judgment," which was a "manifest disregard of federal and local law,

and, Rule 56 of Guam's Rules of Civil Procedure."  (Id. at 13.)  Plaintiff also

---

[6]  Plaintiff also stated that he is asserting diversity jurisdiction.
[7]  Plaintiff also occasionally alleges violations of Guam Rules of Civil
Procedure.

complains that the Superior and Supreme Courts of Guam have "continuously ignored" Melwani's failure to comply with certain federal and Guam laws and that the Superior Court still maintains a post-judgment attachment against the remaining funds (approximately $35,000) in order to prevent Plaintiff from hiring counsel. (Id. at 14.)

In Count II, Plaintiff claims that it was "unfair" that the Superior Court—namely, then-Superior Court Judge Tydingco-Gatewood and Judge Stephen Umpingco—allowed PSEC's attorneys to withdraw from the case while PSEC's partial summary judgment motion was pending.[8] (Id. at 14.)

In Count III, Plaintiff claims that on November 23, 1999, Judge Manibusan lacked jurisdiction to order Plaintiff to redeposit PSEC's funds in the interpleader action "on an alleged Rule 62 violation proffered by Melwani" after Judge Bordallo dismissed the interpleader as being improperly filed. (Id. at 16.)

Count IV alleges that the Superior Court lacked jurisdiction to "entertain" an equitable subrogation defense in Melwani's time-barred Rule 59 Motion for reconsideration of an order granting PSEC's Motion for Summary

---

[8]Plaintiff also asserts that Judge Umpingco had a conflict of interest but allowed the attorneys to withdraw before recusing himself. (Id. at 15.) Umpingco is not named as a defendant in the SAC.

Judgment regarding the interpleader action.  (Id. at 16–17.)

Count V alleges that on August 14, 2000, Judge Bordallo granted Melwani summary judgment on Melwani's cross-claim against PSEC but lacked jurisdiction to do so because he previously dismissed the interpleader.  (Id. at 17–19.)

Count VI alleges that the Supreme Court of Guam—namely, Justice Siguenza and Justices pro tempore Manglona and Thompson—lacked subject matter jurisdiction to issue 2001 Guam 08 because Melwani's Rule 59 motion for reconsideration was time barred and Melwani lacked standing.  (Id. at 19–20.)

Count VII alleges that the Judge Bordallo lacked jurisdiction to enter the May 8, 2001 Rule 54(b) judgment in favor of Melwani regarding Melwani's cross-claim "because he had no basis to maintain the prejudgment attachment on PSEC's contractually due funds from GHURA pursuant to the [Guam Supreme Court's] opinion in 2001 Guam 08[.]"  (Id. at 21.)

Count VIII alleges that the Guam Supreme Court panel comprising Carbullido, Tydingco-Gatewood, and Benson lacked jurisdiction to issue the December 17, 2004 opinion (2004 Guam 22) "because Melwani's surety premium claim was no basis to maintain the prejudgment attachment."  (Id. at 22.)

19

Specifically, it appears that Plaintiff complains that the 2004 opinion ordered Melwani's cross-claim against PSEC in the interpleader action to be resolved in arbitration although the Guam Supreme Court's 2001 opinion stated that Melwani's cross-claim was no basis for Judge Bordallo to maintain the interpleader.  (<u>Id.</u> at 22.)

Count IX, labeled "The Arbitration," appears to claim that an arbitrator's decision in favor of Melwani was erroneous.  (<u>Id.</u> at 23–24.)  Count IX also complains that Judge Bordallo failed to hear or rule on Melwani's motion to confirm the arbitrator's award and PSEC's motion to vacate the arbitrator's award but the Superior Court released $428,000 of PSEC's money to Melwani based on a default judgment against Arnold instead of PSEC in Superior Court case SP0057-07.  (<u>Id.</u> at 24.)

In Count X, labeled "Special Proceedings Case SP 0057-07," Plaintiff appears to argue that the Superior Court lacked jurisdiction to issue a final judgment confirming the arbitration award against Arnold on December 11, 2007 and that the judgment is void.   (<u>Id.</u> at 29.)  Plaintiff also asserts that the December 5, 2007 hearing was held without his or his attorney's knowledge.  (<u>Id.</u> at 26.) Plaintiff states that Justice Carbullido, who wrote the opinion in 2004 Guam 22

and 2010 Guam 07, was "under retainer by Melwani as an attorney-at-law [and] was also retained by GHURA for representation in civil case CV 1233-97[.]" (SAC at 27.)

The Former Guam Judiciary Defendants argue that Plaintiff's SAC should be dismissed on the following grounds: (1) failure to state a claim pursuant to Rule 12(b)(6) and the doctrine of judicial immunity; (2) the Guam Judiciary Defendants are improper defendants under the Supreme Court case Ngiraingas v. Sanchez, 495 U.S. 182 (1990); (3) the Rooker-Feldman doctrine; (4) failure to plead fraud with particularity pursuant to Rule 9(b); and (5) untimely service of process pursuant to Rule 4(m). The Former Guam Judiciary Defendants also seek to strike the SAC as improperly filed pursuant to Rule 15(a)(2).[9]

_____

[9] The Judiciary Defendants have submitted copies of the judgments and opinions in GHURA v. Pac. Super. Ents. Corp., Superior Court of Guam Civil Case No. CV0887-96; GHURA v. Pac. Super. Ents. Corp., Supreme Court of Guam Case No. CVA00-009; GHURA v. Pac. Super. Ents. Corp., Supreme Court of Guam Case No. CVA-03-002; Melwani v. Arnold, Superior Court of Guam Special Proceedings Case No. SP0057–07; Melwani v. Arnold, Supreme Court of Guam Case No. CVA08-001. The Court takes judicial notice of those documents, which are public documents. See United States v. 14.02 Acres of Land More or Less in Fresno Cnty., 547 F.3d 943, 955 (9th Cir. 2008) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) ("Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may take judicial notice of

As a preliminary matter, the Court notes that Plaintiff's inclusion of the former and current Guam Judiciary Defendants in the SAC exceeds the scope of the leave to amend granted by the Court. The Court's March 31, 2011 Order granted Plaintiff leave to amend only with respect to Counts I, II and IV, which asserted allegations against Defendants Manu and Anita Melwani, Lawrence Teker, and Robert Kutz, respectively. (See doc. # 92 at 6–7; doc. # 16 at 2–3.) The Court expressly stated that it did not give Plaintiff leave to amend his claim against the Superior Court of Guam and the Supreme Court of Guam because the claim was barred by Rooker-Feldman and judicial immunity.[10] (Doc. # 92 at 7.) Moreover, Plaintiff did not seek leave to amend nor did Plaintiff receive consent from the Defendants pursuant to Rule 15. See Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave."). Therefore, the Court finds that dismissal of Plaintiff's claims against the former and current Guam Judiciary Defendants is warranted.

Even if Plaintiff were allowed to assert his claims against the former

---

matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment.")).

[10] The March 31, 2011 Order stated: "As to Count I, II and IV, the Plaintiff, as a pro se litigant, shall be given leave to amend. . . . As to Count III, the court hereby dismisses it with prejudice, and the Plaintiff shall not be given leave to amend, for the reasons stated herein." (Doc. # 92 at 6–7.)

and current Guam Judiciary Defendants, these claims would nevertheless fail for the reasons stated below.

A.  Judicial Immunity

Plaintiff's claims fail under the doctrine of judicial immunity. It is well settled that absolute immunity is generally accorded to judges functioning in their official capacities. Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 922 (9th Cir. 2004) (citing Stump v. Sparkman, 435 U.S. 349, 364 (1978)). This immunity reflects the long-standing "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 347 (1871). "A judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority." Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999) (citing Stump, 435 U.S. at 355–56). "The rationale for granting judges immunity from liability for even intentional and malicious conduct while acting in their judicial capacity is that judges should be free to make controversial decisions and act upon their convictions without fear of personal liability." Id. (citing Stump, 435 U.S. at

23

363–64).

Judges are immune from liability for damages in section 1983 actions for acts committed within the scope of their judicial duties, "even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stump, 435 U.S. at 356. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Id. at 356–57 (internal quotations omitted); accord Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986).

There are two exceptions to this rule. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991). The Ninth Circuit has held that a "clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." Miller v. Davis, 521 F.3d 1142, 1147 (9th Cir. 2008) (quoting Mullis v. U.S. Bankr. Court, Dist. of Nev., 828 F.2d 1385, 1389 (9th Cir. 1987). Where "jurisdiction over the subject-matter is invested by law in the judge or in the court which he holds, the manner and extent

in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case." Stump, 435 U.S. at 356 n.6 (emphasis added); accord Ashelman, 793 F.2d at 1076. "Jurisdiction should be broadly construed to effectuate the policies supporting immunity." Ashelman v. Pope, 793 F.2d 1072, 1076 (9th Cir. 1986) (en banc); see also Stump, 435 U.S. at 356 ("Because 'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . ,' the scope of the judge's jurisdiction must be construed broadly . . . ." (citations omitted)).  The Supreme Court in Stump illustrated the distinction between the two types of deficiencies in jurisdiction as follows:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

435 U.S. at 357 n.7.  Even "grave procedural errors" are not enough to deprive a judge of immunity.  Ashelman, 793 F.2d at 1077 (citing Stump, 435 U.S. at 359); see also Harvey v. Waldron, 210 F.3d 1008, 1012 (9th Cir. 2000) ("[A]s long as the judge has jurisdiction to perform the 'general act' in question, he or she is immune 'however erroneous the act may have been, . . . however injurious in its

consequences it may have proved to the plaintiff' and irrespective of the judge's motivation.").

Here, the acts forming the basis of Plaintiff's claims against the Judiciary Defendants were clearly judicial acts, and Plaintiff does not appear to argue to the contrary. Rather, Plaintiff argues that the Judiciary Defendants are not protected by judicial immunity because their acts were taken in the "complete absence of jurisdiction." (Doc. # 144 at 4.) However, although Plaintiff repeatedly asserts that the Guam courts acted without proper jurisdiction, there is nothing in Plaintiff's SAC or Opposition indicating that the Guam courts lacked subject-matter jurisdiction over the proceedings and decisions of which Plaintiff complains. Rather, the bases that Plaintiff relies on to support his argument that the Judiciary Defendants acted without jurisdiction, even if assumed to be true, would amount to at most an excess of jurisdiction, not a clear absence of jurisdiction.[11]

For example, Plaintiff appears to claim that Judge Manibusan "lacked

---

[11] Plaintiff's arguments regarding jurisdiction also largely appear to consist of nothing more than his disagreement with a court's decision. For example, Plaintiff argues that Judge Bordallo lacked jurisdiction to rule in favor of Melwani with regard to Melwani's cross-claim because it "violates due process of law." (Doc. # 124 at 21.)

all personal and subject matter jurisdiction" to order Plaintiff to "deposit his

personal funds back into the registry of the court based on a GRCP Rule 62

violation" because there was no Rule 62 violation.  (Doc. # 144 at 5–6.)  Plaintiff

also asserts that Melwani's Rule 59 motion was time-barred and that Melwani did

not have standing, thus depriving the Superior Court and the Supreme Court of

Guam of jurisdiction to rule on the matter.[12]  (Id. at 6; doc. # 124 at 17, 20.)

Plaintiff also argues that Judge Bordallo lacked subject matter jurisdiction when he

granted Melwani summary judgment on a case that he previously dismissed.[13]

(Doc. # 124 at 17–19.)  Finally, Plaintiff asserts that Judge Bordallo lacked

jurisdiction to enter a default judgment against Arnold in the Special Proceedings

case because, inter alia, the arbitrator failed to file his "rigged 'award' with the

court"; no jurisdictional statement was contained in Melwani's motion to affirm;

---

[12]  In his Opposition, Plaintiff appears to argue that the Supreme Court of
Guam had no jurisdiction because Melwani's lack of standing meant he was not an
aggrieved party under 7 G.C.A. § 25104.  However, Melwani was an aggrieved
party because under the March 17, 2000 final judgment, the Court granted PSEC
summary judgment that adversely affected Melwani.  (See docs. ## 183-1, 183-3.)

[13]  Plaintiff appears to misunderstand the litigation process.  Judge Bordallo
granted Melwani summary judgment with respect to Melwani's crossclaim against
PSEC, which is a separate matter from the dismissal of the interpleader.  (See docs.
## 183-1, 183-2.)  Thus, Judge Bordallo's grant of summary judgment in favor of
Melwani was within the court's jurisdiction.

and the void default judgment exceeds the amount of Melwani's surety premium claim. (Doc. # 124 at 29–31.)

There is no basis for concluding that the Judiciary Defendants were acting in "complete absence of jurisdiction" where there is no allegation that the Superior Court judges or Guam Supreme Court justices are not empowered to hear as a general matter the type of action before the Judiciary Defendants. See Stump, 435 U.S. at 357 & n.17 (holding that "complete absence of jurisdiction" means "clear absence of all jurisdiction," such as where a probate judge tries a criminal case). In Guam, the Superior Court is a court of general jurisdiction. See Guam Code Ann. tit. 7, §§ 3101, 4101. The Supreme Court of Guam has jurisdiction to review appeals from judgments of the Superior Court. See Guam Code Ann. tit. 3 § 12121 ("Any party aggrieved by the judgment of the Superior Court of Guam may appeal therefrom to the Supreme Court of Guam[.]") Moreover, Plaintiff's argument that the Judiciary Defendants also lacked personal jurisdiction is a non-starter, because the Ninth Circuit has established that "a judge is entitled to immunity even if there was no personal jurisdiction over the complaining party." Ashelman, 793 F.2d at 1076. In sum, Plaintiff has not alleged any facts that, even if assumed to be true, would lead the Court to conclude that Defendants were

acting in complete absence of jurisdiction. See Stump, 435 U.S. at 357 & n.17;

Mireles v. Waco, 502 U.S. 9, 13 ("If judicial immunity means anything, it means

that a judge will not be deprived of immunity because the action he took was in

error . . . or was in excess of his authority.") (internal quotation omitted); McCulley

v. Chatigny, 390 F. Supp. 2d 126, 130 (D. Conn. 2005) (holding that the plaintiff's

allegation that the judge ruled on an untimely motion for reconsideration is

insufficient to strip the judges of their absolute immunity); Franceschi v. Schwartz,

57 F.3d 828, 830–31 (9th Cir. 1995) (finding that a commissioner's reactivation of

a bench warrant after agreeing to transfer the case to another judge was an act in

excess of jurisdiction rather than in the clear absence of jurisdiction); Mullis v.

U.S. Bankruptcy Court for the District of Nevada, 828 F.2d 1385, 1389 (9th Cir.

1987) (bankruptcy judge's actions after debtor filed notice of appeal may have

been in excess of jurisdiction but were not in clear absence of jurisdiction) (cited

by Franceschi, 57 F.3d at 831); O'Neil v. City of Lake Oswego, 642 F.2d 367, 369

(9th Cir. 1981) (a pro tem municipal judge's "action in holding [the plaintiff] in

contempt, an offense within his jurisdiction, although without the requisite papers

to confer jurisdiction over this particular commission of the offense," is in excess

of jurisdiction). Accordingly, Plaintiff's claims against the Judiciary Defendants

are barred by judicial immunity.

B.      Rooker-Feldman Doctrine

The Judiciary Defendants contend that Plaintiff's claims against them are barred by the Rooker-Feldman doctrine because Plaintiff is attempting to undo the judgments of the Guam courts.  (Judiciary Mot. at 6–7.)  The Rooker-Feldman doctrine generally bars federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004).  Such a de facto appeal exists where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules."   Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (9th Cir. 2008).  "In such circumstances, 'the district court is in essence being called upon to review the state court decision.'"  Id. (quoting Feldman, 460 U.S. at 483 n.16).  "Essentially, the doctrine bars 'state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced' from asking district courts to review and reject those judgments." Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th

Cir. 2007) (quoting <u>Exxon Mobile Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)); <u>accord</u> <u>Reusser</u>, 525 F.3d at 859. The <u>Rooker</u>-<u>Feldman</u> doctrine "is not limited to claims that were actually decided by the state courts, but rather it precludes review of all 'state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" <u>Bianchi v. Rylaarsdam</u>, 334 F.3d 895, 901 (9th Cir. 2003) (quoting <u>Kenmen Eng'g v. City of Union</u>, 314 F.3d 468, 475 (10th Cir. 2002). "Stated plainly, <u>Rooker</u>-<u>Feldman</u> bars any suit that seeks to disrupt or undo a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." <u>Id.</u> Moreover, <u>Rooker</u>-<u>Feldman</u> "prevents lower federal courts from exercising jurisdiction over any claim that is 'inextricably intertwined' with the decision of a state court, even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based on constitutional principles." <u>Id.</u> at 901 n.4.

However, <u>Rooker-Feldman</u> does not bar actions by non-parties to the state court judgment merely because they were in privity with a state-court loser. <u>Lance v. Dennis</u>, 546 U.S. 459, 466 (2006). Here, Arnold was not a party in the

interpleader case filed by GHURA; Arnold's company, PSEC, was a named party. Therefore, Plaintiff's claims against the Judiciary Defendants regarding the interpleader case are not barred by Rooker-Feldman.

Plaintiff, however, was a named party in the Special Proceedings Case and was clearly a "state-court loser[] complaining of injuries caused by [a] state-court judgment." Henrichs, 474 F.3d at 613. Although the Guam Superior Court decided to award a default judgment in the Special Proceedings Case, a default judgment is a decision on the merits for the purposes of Rooker-Feldman. See Reusser, 525 F.3d at 860 (default judgment bars federal review even when parties argue it could have been based on procedural grounds when "the parties did not present a procedural argument before the state court"). Thus, Plaintiff's claims that the judgment in the Special Proceedings Case is void are barred under Rooker-Feldman.

Although the SAC's prayer for relief only mentions damages, Plaintiff plainly seeks to void or disrupt the adverse rulings by the Guam courts. Plaintiff's federal suit against the Judiciary Defendants asserts that the judgments against him are incorrect or otherwise void, and Plaintiff is claiming injury resulting from those allegedly erroneous judgments. "As courts of original jurisdiction, however,

federal district courts lack jurisdiction to review the final determinations of a state court in judicial proceedings." Doe & Assoc. Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001). His alleged injuries and damages flow from the Guam courts' judgments. Indeed, Plaintiff defines the case as "a 17-year saga wherein the Superior and Supreme Courts of Guam have deprived Arnold of his life's savings by purposely issuing void judgments for the benefit of Melwani and GHURA."[14] (SAC at 2.) Moreover, Plaintiff would only receive a damage award from the Judiciary Defendants if this court determined that the Guam Superior and Supreme Courts' decisions were in error. Thus, to evaluate his claims and grant him the relief he seeks, this court would be required to review and reject those orders. Accordingly, to the extent that Plaintiff is attempting to appeal the court decisions in the Special Proceedings Case, the Rooker-Feldman doctrine prohibits these claims.[15]

---

[14] In his Motion to Stay Proceedings Pending Appeal, Plaintiff also stated that he would dismiss the Judiciary Defendants upon "the Superior Court's immediate release of the $35,000.00 prejudgment attachment remaining its registry [sic], and the recovery of the $428,000.00 illegally in Melwani's possession." (Doc. # 180 at 1–2.)

[15] In his Opposition, Plaintiff appears to argue that Rooker-Feldman does not apply because he was denied the "right to a full and fair opportunity to litigate" his claims. (Doc. # 144 at 13.) Specifically, Plaintiff complains that he and PSEC "have been deprived of their property by the local courts for 16 years by the court's

Because the Court's foregoing determinations with respect to judicial immunity and the Rooker-Feldman doctrine dispose of Plaintiff's claims against the Judiciary Defendants, the Court need not address the Judiciary Defendants' remaining arguments.

II. Melwani Defendants' Motion to Dismiss

The Melwani Defendants argue that Plaintiff's SAC should be dismissed as to them because (1) diversity jurisdiction is lacking, (2) the Court lacks jurisdiction because Plaintiff failed to join PSEC as a necessary party to the action, and (3) the SAC fails to state a claim. (Doc. # 158.) The Melwani Defendants also argue that Plaintiff has failed to state a cause of action against

refusal to rule on federal law and Guam's positive civil laws on licensing and insurance authority[.]" (Id.) Plaintiff cites Robinson v. Ariyoshi, in which the Ninth Circuit held that Rooker-Feldman is inapplicable "where the complaining party did not have a full and fair opportunity to litigate a claim in state court or where the state court demonstrated inability or unwillingness to protect federal rights." 753 F.2d 1468, 1472 (9th Cir. 1985), vacated on other grounds by Robinson v. Ariyoshi, 887 F.2d 215 (9th Cir. 1989). This exception, however, is applicable only when a state court "had explicitly refused to hear federal constitutional claims," not when the state court had considered and rejected those claims, or when those claims were not raised but could have been. Partington v. Gedan, 961 F.2d 852, 865 (9th Cir. 1992). Plaintiff fails to state beyond conclusory assertions any allegations that a Guam court explicitly refused to hear his claims. Plaintiff "simply has not alleged an 'inability to be heard' that is analogous to the inability of the plaintiffs in Robinson, or that justifies a departure from the strictures of Rooker-Feldman." Partington, 961 F.2d at 865.

Defendants Pacific American Title Insurance and Escrow Company ("PATICO") and Pacific Tri-Star, Inc. ("Tri-Star"). For the reasons below, the Court finds that the Melwani Defendants' arguments have merit; Plaintiff's claims against the Melwani Defendants, PATICO, and Tri-Star must be dismissed.

A.    Diversity Jurisdiction

The Melwani Defendants are all citizens of the Territory of Guam. They argue that diversity jurisdiction is lacking in the instant case because Plaintiff is also a citizen of the Territory of Guam, not a citizen of Missouri, as he claims in the SAC. This is a factual rather than facial challenge to this Court's subject-matter jurisdiction, and the Court "may look beyond the complaint" to evaluate jurisdictional facts without converting the motion into a motion for summary judgment. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987) (collecting cases). For the reasons given below, the Court concludes that, in light of all the available evidence, it lacks diversity jurisdiction over Plaintiff's claims against the Melwani Defendants.

## 1.    Burden of Proof

Federal courts are courts of limited subject matter jurisdiction, and there is no presumption that a court has jurisdiction in any particular case.  See U.S. Const. art. III.  Hence, in order to properly sue in federal court, a plaintiff must affirmatively establish at the outset that subject matter jurisdiction existed at the time of filing.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

A plaintiff may plead subject matter jurisdiction under either diversity or "federal question" jurisdiction.  Under diversity jurisdiction, district courts have original jurisdiction in civil actions where the matter in controversy exceeds $75,000 and where the suit is between citizens of different states.  28 U.S.C. § 1332(a).  "Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008) (citing Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806)).

An individual is deemed to be a citizen of the state where he is "domiciled"—that is, the one "place where he has his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning

whenever he is absent therefrom." Charles Alan Wright, Law of Federal Courts,

146 (5th ed. 1994); see also Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986) ("[A]

person is domiciled in a location where he or she has established a fixed habitation

or abode" and intends to remain "permanently or indefinitely") (internal quotation

marks omitted). A person's state citizenship is determined by his state of

domicile, not his state of residence. Kanter v. Warner-Lambert Co., 265 F.3d 853,

857 (9th Cir. 2001). "A person residing in a given state is not necessarily

domiciled there, and thus is not necessarily a citizen of that state." Id.; see also

Weible v. United States, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical,

whereas domicile is generally a compound of physical presence plus an intention to

make a certain definite place one's permanent abode, though, to be sure, domicile

often hangs on the slender thread of intent alone, as for instance where one is a

wanderer over the earth. Residence is not an immutable condition of domicile.").

This statutory grant of diversity jurisdiction "is to be strictly

construed," and jurisdiction cannot "be maintained by mere averment." Kantor v.

Wellesley Galleries Ltd., 704 F.2d 1088, 1092 (9th Cir. 1983); Lew v. Moss, 797

F.2d 747, 751 (9th Cir. 1986) (citation omitted). The party invoking diversity

jurisdiction bears the burden of demonstrating jurisdiction and must support its

claim with "competent proof" by a preponderance of the evidence. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403–04 (9th Cir. 1996). In support of a motion to dismiss for lack of subject matter jurisdiction, the moving party may submit affidavits or any other evidence properly before the court. Colwell v. Dep't of Health & Human Services, 558 F.3d 1112, 1121 (9th Cir.2009). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Id. Thus, Plaintiff, as the party invoking diversity jurisdiction, bears the burden of proving by a preponderance of the evidence that the parties are indeed diverse.

    2. Plaintiff Has Not Shown by a Preponderance of the Evidence that the Parties Are Diverse

    Plaintiff has changed residences frequently over the last two decades, spending years at a time in Guam, Missouri, Indiana, and Nevada. (See Doc. # 88.) However, not every absence, even an extended one, effects a change in domicile. Rather, "[a] change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." Lew, 797 F.2d at 750 (citations omitted). There is a "presumption in favor of an established

38

domicile as against a newly acquired one." Id. at 751, 750. Thus the question

before the Court is whether one, some, or all of these changes in Plaintiff's

residence also constituted changes in domicile. For the reasons that follow, the

Court finds that Plaintiff was domiciled in Guam as of October, 1998, and that he

has failed to prove by a preponderance of the evidence that his domicile had

changed to Missouri by the time he filed the complaint in the instant case.

i.    Plaintiff's Domicile As of October, 1998

Plaintiff does not dispute that he was a resident of Guam as of October

16, 1998. (Doc. # 88 at 6.) However, "[a] person residing in a given state is not

necessarily domiciled there." Kanter, 265 F.3d at 857. Again, "[d]omicile . . .

requires both physical presence at a given location and an intent to remain there

indefinitely." Lew, 797 F.2d at 752.

Ordinarily, to determine whether the second, subjective prong of the

domicile test—intent to establish a new domicile—has been satisfied, this Court

would carefully weigh

> a number of factors (no single factor controlling), including: current
> residence, voting registration and voting practices, location of personal and
> real property, location of brokerage and bank accounts, location of spouse
> and family, membership in unions and other organizations, place of
> employment or business, driver's license and automobile registration, and

payment of taxes.

Id. at 750.  Indeed, many of these factors weigh in favor of a finding that, at some point before 1998, Plaintiff intended to establish a new domicile in Guam.[16]  In this case, however, Plaintiff's subjective belief that he was domiciled in Guam as of October 16, 1998, can hardly be disputed; Plaintiff himself confirmed that belief in a Civil Cover Sheet he filed on October 22, 1998, in the United States District Court for the Eastern District of Missouri.  (Doc. # 159-1.)

A plaintiff must submit a Civil Cover Sheet to the Clerk of Court for each civil complaint filed in the Eastern District of Missouri; the Clerk then uses the cover sheet to initiate the civil docket sheet.  (Id.)  Each Civil Cover Sheet contains a number of blanks and check boxes for a plaintiff to succinctly describe the nature of his cause of action.  Section I of this form asks for the plaintiff's name and for the "county of residence of [the] first listed plaintiff."  (Id. (emphasis

---

[16] For example, according to Plaintiff's own affidavit (doc. # 88), he moved to Guam in the summer of 1992, bringing his family with him.  (Id. at 2.)  Plaintiff was employed by PSEC, which is a Guam corporation, and has paid taxes in Guam.  (Id. at 13.)  Plaintiff did not return to Missouri until August of 1995, when he sued for divorce from his wife, who had moved there with Plaintiff's children in 1994.  (Id. at 5.)  The following year, Plaintiff returned to Guam and began renting his property in Missouri to a third party.  (Id. at 6.)  At the time he filed suit in the Eastern District of Missouri in 1998, Plaintiff was still a resident of Guam.  (Id. at 6.)

40

added).)   On the Civil Cover Sheet Plaintiff filed in the Eastern District of Missouri on October 22, 1998, Plaintiff wrote his own name and indicated that his county of residence was "Guam."  (Id.)

Section III of this form is called "Citizenship of Principal Parties" and requires the plaintiff in a diversity case to indicate with a check mark whether he is a "Citizen of This State" or a "Citizen of Another State."  (Id. (emphasis added).) On the Civil Cover Sheet Plaintiff submitted in the Eastern District of Missouri on October 22, 1998, Plaintiff indicated with an "X" that Defendants were "Citizen[s] of This State"—that is, citizens of Missouri.  (Id.)  Plaintiff then indicated with an "X" that he was a "Citizen of Another State," writing "Territory of Guam" immediately below the check box.  Plaintiff dated the Civil Cover Sheet "Oct. 16, 1998" and signed it, filing it with the District Court for the Eastern District of Missouri on October 22, 1998.  (Id.)

Finally, Section IV of the Civil Cover Sheet requests the "Cause of Action," asking plaintiffs not to cite jurisdictional statutes "unless diversity" is the statute under which they are filing.  (Id.)  In this space, Plaintiff wrote "U.S.C. Title 28 § 1332 Diversity Action for Illegitimate Foreclosure and Conversion - Legal Malpractice."  (Id.)

41

Few pieces of evidence would offer more convincing proof of Plaintiff's subjective belief that he was domiciled in his current residence than his affirmation of that fact in a court filing. While residence is not equivalent to domicile for diversity purposes, <u>citizenship</u> is. <u>See</u> <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state citizenship is . . . determined by her state of domicile, not her state of residence."); <u>see also</u> <u>McClanahan v. Galloway</u>, 127 F. Supp. 929, 930 (N.D. Cal. 1955) ("Citizenship and domicile are substantially synonymous in determining the jurisdiction of this Court under Title 28 U.S.C. § 1332."). When Plaintiff asserted that he was a citizen of the "Territory of Guam," therefore, he was asserting that he was domiciled there.

Plaintiff now claims that he "only alleged that [he] was a <u>resident</u> of Guam and not a <u>citizen</u> of Guam" (doc. # 88 at 6 (emphasis added)). However, this assertion actually weighs in <u>favor</u> of a finding that he was domiciled in Guam as of the time he filed the Civil Cover Sheet for two reasons: first, because it indicates that Plaintiff understands the difference between residence and citizenship; and second, because it is directly contradicted by his own assertions on the Civil Cover Sheet, where he wrote "Guam" not only in response to a question about his

42

"residence" but also in response to a separate question about his "citizenship." (Doc. # 159-1.)

Just as tellingly, Plaintiff specifically cited 28 U.S.C. § 1332—granting federal jurisdiction over actions between "citizens of different States"—as the source of federal jurisdiction over his cause of action against Missouri citizens. (Id.)  That Plaintiff did so demonstrates that he understood his relationship with Guam to be sufficient to render him diverse from defendants domiciled in Missouri—in this case, that he understood himself to be a citizen not of Missouri but of Guam.  Because Plaintiff both resided in Guam and subjectively considered himself domiciled there, the Court concludes that Plaintiff was legally domiciled in Guam as of October of 1998.

In addition, because Plaintiff asserted that he was a Guam citizen in 1998 in order to invoke diversity jurisdiction, equitable principles estop him from now disputing his own assertion for the same purpose.  See, e.g., Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., 568 F. Supp. 2d 1152 (C.D. Cal. 2008) (successors in interest to beneficiaries of movie star's will were judicially estopped from asserting that she was domiciled in California where that position was contrary to position taken by their predecessors in interest), aff'd sub nom. Milton

43

H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983 (9th Cir. 2012);

Ceglia v. Zuckerberg, 772 F. Supp. 2d 453, 456 n.1 (W.D.N.Y. 2011) (defendant

estopped from disputing previous New York domicile on plaintiff's motion to

remand to state court when he had successfully persuaded another district court

that his domicile was in New York; however, he was not estopped from arguing

subsequent change of domicile on changed facts); Jones v. Law Firm of Hill and

Ponton, 141 F. Supp. 2d 1349 (M.D. Fla. 2001) (plaintiff estopped from asserting

different domicile in subsequent action against his attorneys than was established

in first action in which his attorneys represented him).

### ii.    Plaintiff Has Not Shown a Change in Domicile

Having established that Plaintiff was domiciled in Guam as of

October 1998, the Court now addresses whether Plaintiff has shown by a

preponderance of the evidence that his domicile had changed to Missouri by the

time he filed the complaint in the instant case—that is, by December 22, 2009.

(See doc. # 1.)  As described above, a party claiming diversity jurisdiction must

prove that the parties are diverse by a preponderance of the evidence.  For the

reasons described below, the Court concludes that Plaintiff has not met this burden.

As the Supreme Court explained in Mitchell v. United States, "[a]

44

domicile once acquired is presumed to continue until it is shown to have been changed." 88 U.S. 350, 353 (1874). The Ninth Circuit has required a party alleging a newly acquired domicile to produce "substantial evidence" to rebut the presumption favoring his previously established domicile. See Lew, 797 F.2d at 752. This Court therefore presumes that Plaintiff's domicile is in Guam until he produces substantial evidence sufficient for this Court to conclude by a preponderance of the evidence that his domicile has changed. "To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there." Mitchell, 88 U.S. at 353.

On February 18, 2011, in response to the Guam District Court's February 8, 2011 order requiring Plaintiff to "supplement the record to support his argument that his domicile is Missouri and not Guam" (doc. # 84 at 4), Plaintiff submitted an Affidavit to Prove Diversity of Citizenship (doc. # 88). In it, Plaintiff described, in relevant part, his multiple changes in residence between October 1998 and December 2009. Plaintiff also attached five exhibits in support of his assertions in the affidavit.[17]

---

[17] Plaintiff attached (1) a letter dated January 20, 2011, from U.S. Bank Home Mortgage regarding a mortgage on a home located at 495 Hereford Park; (2) a document describing a parcel of land in Franklin County, Missouri (apparently

According to Plaintiff's affidavit, Plaintiff flew from Guam to Missouri in December of 1999. (Id. at 8.) He concedes, however, that he flew there specifically to prosecute the real estate fraud suit he had filed in 1998, and he returned to Guam just two months later. (Id. at 7–8.) The Court thus finds no evidence that this short trip to Missouri effected a change in Plaintiff's domicile.

Plaintiff's next trip to Missouri took place sometime after March of the year 2000; Plaintiff does not give a precise date. (Id. at 9.) Again, however, the Court sees little evidence that this trip was meant to effect a change in Plaintiff's domicile. Instead, Plaintiff's statement that he returned to Missouri and then "borrowed $5,000 from [his] sister and retained another law firm to handle the appeal to the 8th Circuit" (id. at 9) suggests that the reason for the trip was, again,

---

the property on which the aforementioned home is located); (3) a bill dated November 6, 2009, from the State of Missouri's Family Support Payment Center indicating that Plaintiff owed over $5,000 in past-due child support; (4) an undated letter from First Premier Bank addressed to Plaintiff at 495 Hereford Park in New Haven, Missouri, which apparently accompanied a credit card; and (5) a letter from U.S. Bank Home Mortgage dated August 14, 2007, and addressed to Plaintiff's post office box in Guam, indicating that Plaintiff was behind on his mortgage. Plaintiff presumably submitted these pieces of evidence to demonstrate (1) that he owned a home in Missouri and (2) that he owed child support there. For the reasons given below, however, the Court has determined that, even assuming that Plaintiff's assertions are true, they do not establish by a preponderance of the evidence that he was a citizen of Missouri as of the date he filed the complaint in this case. For this reason, the Court need not discuss these exhibits further.

his desire to prosecute the real estate fraud case he had filed in the Eastern District of Missouri.

At some point soon after he arrived in Missouri, apparently in June of 2000, Plaintiff was jailed for fifty-two days.  (Id.)  It is a well-settled proposition that "[o]ne does not change his residence to prison by virtue of being incarcerated there." Gonzalez v. Rubin, 225 F.3d 662, 662 (9th Cir. 2000).  Nor do periods of incarceration effect a change in domicile to that state.  Id.  Moreover, since Plaintiff, like most prisoners, was incarcerated against his will, those fifty-two days hardly raise the inference that Plaintiff intended to make Missouri his home.

After Plaintiff's incarceration ended, apparently in August of 2000, he "was employed producing computer circuit boards" for approximately three months.  (Id. at 10.)  He then returned to Guam, where he filed for bankruptcy on behalf of PSEC in late December.  (Id.)  Once again, the Court does not find these few months Plaintiff spent in Missouri sufficient to effect a change in domicile to that state.  Although Plaintiff's affidavit does not make this point clear, the case he had filed in the Eastern District of Missouri was on appeal at that time; the Eighth Circuit issued its opinion on January 29, 2001, shortly after Plaintiff returned to Guam.  See Arnold v. Wood, 238 F.3d 992 (8th Cir. 2001).  Again, therefore,

Plaintiff's reason for being in Missouri was related to the case he was prosecuting there, which does not suggest he truly intended to change his domicile.

Plaintiff next visited Missouri for approximately one month in August of 2001. (Doc. # 88 at 11.) In September, Plaintiff departed for Las Vegas, where he was employed until April of 2002, or for approximately eight months. (Id.) When Plaintiff returned to Missouri in April 2002, he was jailed again for failure to pay child support. (Id.) Upon his release, Plaintiff worked in St. Louis, Missouri, for approximately five months. (Id.) Because of the short-term nature of these changes in residence—and especially because Plaintiff spent more time in Las Vegas than in Missouri during this period—the Court does not find by a preponderance of the evidence that Plaintiff established his domicile in Missouri during this time.

Next, Plaintiff says that he moved to Indiana, where he worked for four years. (Id.) However, because Plaintiff has never claimed Indiana citizenship, and because he presents no other evidence of his residence in Indiana during this time, the Court does not find by a preponderance of the evidence that Plaintiff became an Indiana citizen during those years. Moreover, while Plaintiff claims that during this period he "always maintained [his] domicile in Missouri" and that

"at great risk [he] would travel to [his] home in Missouri every other weekend to maintain and repair [it] after years of neglect" (id. at 12), this claim, even if true, does not show by a preponderance of the evidence that Plaintiff established his domicile in Missouri—especially when Plaintiff suggests elsewhere in his affidavit that he was renting said property to other inhabitants at the time.  (See id. at 6.)

In July of 2006, Plaintiff returned to Guam, where he was living and working when he initiated the instant lawsuit in December of 2009.  (Id. at 12.)

While Plaintiff, in his affidavit, repeatedly asserts that he "always maintained [his] domicile in Franklin County, Missouri" (see, e.g., id. at 2), in the context of the entire affidavit, is clear that Plaintiff merely meant that he always intended to move back to Missouri someday.  However, a vague intention to move somewhere at some point in the future, even back to one's hometown, is not in itself sufficient to establish domicile there.  See Gilbert v. David, 235 U.S. 561, 569 (1915) ("If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it is to be deemed his place of domicil, notwithstanding he may entertain a floating intention to return at some future period.") (internal quotation marks omitted); 13E Fed. Prac. & Proc. Juris. § 3613 (3d ed.) ("[A] definite and sincere intention to

make a place one's home at some time in the future is not enough to make that place an individual's present domicile.").  Instead, "domicile is evaluated in terms of objective facts" and "statements of intent are entitled to little weight when in conflict with facts." Lew, 797 F.2d at 747, 750 (internal quotation marks omitted).

Assuming for present purposes that Plaintiff's own assertions are true, the "objective facts" are these: By the time Plaintiff initiated the instant case, he had been a resident of Guam for over two years.  (Doc. # 84 at 4; doc. # 34 at 2–3.)  During that time, Plaintiff was employed by Able Industries of the Pacific, a Guam corporation.  (Doc. # 88 at 13.)  In the previous year's national election, Plaintiff had voted not by submitting an absentee ballot to the State of Missouri, but by voting in person in Guam.  (Id. at 12–13.)  Furthermore, at the time of filing, Plaintiff had not lived in Missouri since 2002—over seven years previously—and then only for five months.  (Id. at 11.)

The Court recognizes the long-standing rule that diversity jurisdiction is to be strictly construed.  See Owen Equipment & Erection v. Kroger, 437 U.S. 365, 377 ("The policy of the [diversity] statute calls for its strict construction."); Kantor v. Wellesley Galleries, Inc., 704 F.2d 1088, 1092 ("[T]he congressional grant of diversity jurisdiction is to be strictly construed.").  "Any doubt as to

50

whether jurisdiction exists is normally resolved against a finding of such jurisdiction." <u>See</u> Hon. David Hittner, Hon. William W. Schwarzer, Hon. A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial ¶ 2:233 (5th ed. 2006).  In light of all the evidence presented, considering the presumption in favor of an established domicile over a newly acquired one, and resolving doubts against a finding of diversity jurisdiction, this Court is constrained to conclude that Plaintiff has not shown by a preponderance of the evidence that he was not a citizen of Guam at the time he filed the instant suit. Accordingly, the Court does not have diversity jurisdiction over this controversy and must dismiss Plaintiff's claims against the Melwani Defendants.

B.    <u>Real Party in Interest</u>

Plaintiff alleges that this Court has jurisdiction under 28 U.S.C. § 1332, diversity of citizenship.  For the reasons provided in part A, Plaintiff has not demonstrated by a preponderance of the evidence that this court has diversity jurisdiction.  In an abundance of caution, however, the Court will address the Melwani Defendants' second argument for dismissal.   The Melwani Defendants claim that PSEC, a Guam corporation, is the real party in interest and a necessary party to this action. (Doc. # 159 at 7.)  They argue that PSEC must be joined and

that doing so would destroy diversity, eliminating this Court's jurisdiction.

For the reasons that follow, the Court finds that Plaintiff is not the real party in interest for the claims asserted against the Melwani Defendants; that PSEC is the real party in interest; that PSEC is a necessary party; and that Plaintiff's claims against the Melwani Defendants must therefore be dismissed.

1.    Real Parties in Interest and Necessary Parties

Federal Rule of Civil Procedure 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest."  The effect of this passage is that every action must be brought by the person who, according to governing substantive law, is entitled to enforce the right.  See  § 1543 Real Party in Interest—In General, 6A Fed. Prac. & Proc. Civ. § 1543 (3d ed.).  As the Advisory Committee explained in its Note to the 1966 amendment to Rule 17(a):

> [T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata.

(Id.)  In a diversity case, whether a plaintiff is the real party in interest under Rule 17(a) depends upon whether that plaintiff is a proper party to maintain the action under applicable state law.  See Am. Triticale, Inc. v. Nytco Servs., Inc., 664 F.2d

1136, 1141 (9th Cir.1981) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938));

see also Glacier Gen. Assurance Co. v. Symons, 631 F.2d 131, 133 (9th Cir. 1980)

(using state law in a diversity case to identify the underlying legal relationship

between the parties, upon which "[t]he identity of the real party in interest . . .

depends"). Compare United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 381

(1949) (applying federal substantive law to determine real parties in interest for

purposes of a case arising under a federal statute). This inquiry is often expressed

in terms of prudential standing. Dunmore v. United States, 358 F.3d 1107, 1112

(9th Cir. 2004) ("Beyond this 'irreducible constitutional minimum of standing' . . .

we additionally require as a prudential matter that [plaintiff] assert his own legal

interests as the real party in interest.") (quoting Warth v. Seldin, 422 U.S. 490, 499

(1975)).

      While the Melwani Defendants use the terms "real party in interest"

and "necessary party" interchangeably, the fact that an absent person could bring

the action as a real party in interest does not of itself make that person a necessary

party under Federal Rule of Civil Procedure 19. Rule 19 provides, in relevant part,

that

      [a] person who is subject to service of process and whose joinder will not

deprive the court of subject-matter jurisdiction <u>must</u> be joined as a party if: (A) in the person's absence complete relief cannot be accorded among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the interest.

(<u>Id.</u> (emphasis added).)  To proceed, therefore, a plaintiff must satisfy the requirements of both Rule 17 <u>and</u> Rule 19.  <u>See</u> <u>U-Haul Int'l, Inc. v. Jartran, Inc.</u>, 793 F.2d 1034, 1038 (9th Cir. 1986) ("Fed. R. Civ. P. 17 governs only the right of [plaintiff] to bring the suit. It is Fed. R. Civ. P. 19 that tells us whether the appropriate parties are before the court. Both rules must be satisfied before the case may proceed.").

        2.    <u>Real Parties in Interest Under Guam Law</u>

To determine whether Plaintiff is a real party in interest in this diversity case, the Court must look to Guam law.  <u>Glacier Gen. Assurance Co.</u>, 631 F.2d at 133.  "The forum state's procedural statute or rule defining the real party in interest concept is not applicable, however, because it only governs who may sue in the state courts; under Rule 17(a), the federal courts are concerned only with that portion of state law from which the specific right being sued upon stems." <u>Allstate</u>

Ins. Co v. Hughes, 358 F.3d 1089, 1094 (9th Cir. 2003) (quotations and citation omitted).  In other words, the Court must look to Guam contract and corporate law to determine whether Plaintiff, as President of PSEC, has the right to sue for damages allegedly arising from the breach of the profit-sharing agreement between PSEC, Melwani, and Pacific Tri-Star.

i.      Guam Contract Law

Under Guam law, and as a matter of contract law generally, a plaintiff has no standing to enforce the terms of a contract unless he is (1) a party to the contract, (2) in privity of contract with the defendant, or (3) a third party for whose benefit the contract was expressly made.  See 18 Guam Code Ann. §§ 85101–85204; Restatement (Second) of Contracts (1981).  If a plaintiff does not have standing to enforce a right under a contract, he is not a real party in interest to that contract.  People v. Tennessen, 2011 Guam 2, cert. denied, 132 S. Ct. 99 (U.S. 2011) (a plaintiff without constitutional or statutory standing "is not a Real Party in Interest") (internal quotations omitted).  Thus, in order to demonstrate that he is a real party in interest to the profit-sharing agreement, Plaintiff must demonstrate that he is (1) a party to the agreement, (2) in privity of contract with the Melwani Defendants, or (3) a third party for whose benefit the profit-sharing agreement was

expressly made.

ii.   Guam Corporate Law

Under Guam law, as elsewhere, a corporation is a distinct legal entity that is separate from its officers and capable of entering into contracts on its own behalf.  See Guam Business Corporation Act, 18 Guam Code Ann. §§ 28101–281707 (2012); 12 Guam Code Ann. § 78106 (delegating to corporations "the power to . . . make and enter into contracts"); see also Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); 18 C.J.S. Corporations § 6 ("The basic purpose of incorporation is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs.").  However, a court may "pierce the corporate veil" and disregard the corporation where it determines "(1) that there is such a unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." Guam Econ. Dev. Auth. v. Island Equip. Co., Inc., Civ. No. A97-030,

1998 WL 270280 (Sup. Ct. Guam, May 28, 1998) (quoting <u>Associated Ins.</u>

<u>Underwriters, Inc. v. Guam Int'l Insurers, Inc.</u>, Civ. No. 90-00059A (D. Guam

App. Div. 1991)).

Because a corporation is distinct from its officers and shareholders,

the latter do not have standing to pursue personal claims for injuries the

corporation suffered.  <u>See, e.g.</u>, <u>Sherman v. British Leyland Motors, Ltd.</u>, 601 F.2d

429 (9th Cir. 1979) (even corporate president's personal guarantee of corporation's

obligations under its franchise agreements did "not warrant departure from the

general rule of separation of identifies, nor afford [him] standing to bring suit in his

individual capacity"); <u>Erlich v. Glasner</u>, 418 F.2d 226, 227–28 (9th Cir.1969)

(status of litigant as sole stockholder does not in itself authorize personal suit;

rejecting argument that claim could be asserted by both parties when damages

flowed to plaintiff only through corporation); <u>AMESCO Exports, Inc. v.</u>

<u>Associated Aircraft Mfg. & Sales, Inc.</u>, 977 F. Supp. 2d 1014 (C.D. Cal. 1997)

(corporate officer did not have standing to sue for breach of a contract he signed on

behalf of corporation; officer was not a party to the contract in his individual

capacity), <u>abrogated on other grounds by</u> <u>AMESCO Exports, Inc. v. Associated</u>

<u>Aircraft Mfg. & Sales, Inc.</u>, 87 F. Supp. 2d. 1013 (C.D. Cal. 1997).  Instead, the

management may bring suit in the corporation's name; or, in certain situations, shareholders may bring a derivative suit on the corporation's behalf. In both cases, the corporation is the real party in interest. <u>See</u> Fed. R. Civ. P. 23.1; <u>Koster v. (American) Lumbermens Mut. Cas. Co.</u>, 330 U.S. 518, 523 (1947) (derivative claims are "not [plaintiff's] own but the corporation's"; corporation "is the real party in interest" and an "indispensable party").

ii. <u>PSEC Is the Real Party in Interest Under Guam Law</u>

The parties do not dispute that PSEC is a Guam corporation. Neither party claims that PSEC during material times did not maintain a corporate existence separate and apart from Plaintiff, notwithstanding that the latter was President of the corporation. Under Guam law, therefore, PSEC had the power to enter into contracts on its own behalf.

All available evidence indicates that PSEC, not Plaintiff individually, was a party to the profit-sharing agreement at issue in this litigation. First, the agreement, which was executed on June 10, 1994, states that it "is an Agreement by and between PACIFIC SUPERIOR ENTERPRISES CORPORATION, a Guam corporation, . . . and MANU P. MELWANI" (doc. # 19, ex. A at 1). Second, paragraph 10, entitled "Understanding of Parties," reiterates that "PSEC's

58

corporate resolution authoriz[es] its President"—Plaintiff—"to execute this agreement" on its behalf (id. at 5). Third, Exhibit B to the agreement, the aforementioned resolution, states that the "Board" of PSEC—composed of Plaintiff and Resa Arnold—"reviewed in detail the proposed Agreement . . . between the Corporation and Manu P. Melwani" and authorized Plaintiff to execute it" (doc. # 19, ex. A, at 11 (emphasis added)). And finally, Plaintiff signed the agreement in his capacity as President and "Duly Authorized Representative" of PSEC, not as an individual (id. at 9). No rights or responsibilities were reserved expressly in any of the written documents in favor of, or against, Plaintiff; he was not an intended third-party beneficiary. Even Plaintiff, in the SAC, acknowledges that he "signed [the] profit sharing agreement on behalf of PSEC," not for himself (SAC at 5 (emphasis added)); and Plaintiff repeatedly refers to the funds in dispute as "PSEC's contractually due funds" (see, e.g., id. at 21).

Additionally, the original Superior Court case is directed to and answered by PSEC as a party, rather than Plaintiff individually (see Guam Housing and Urban Renewal Authority v. Pacific Superior Enterprises and Manu Melwani, Civil Case No. 0887-96); Plaintiff himself identified PSEC as the party counter-claiming against Melwani in his pre-arbitration pleadings (doc. # 19, ex. C); the

arbitration award identifies PSEC as the entity having a potential claim to the disputed funds, indicating that Plaintiff was "dba"—that is, "doing business as"—PSEC (doc. # 19, ex. D); and Plaintiff, in his letter to the American Arbitration Association dated April 4, 2007—a letter that listed PSEC as the return address—refers to the disputed funds as "my company's money" three times (doc. # 19, ex. E).

In that same letter, Plaintiff complains that the arbitrator "intentionally confuse[d] PSEC with Richard Arnold when he kn[ew] that a corporation is legally recognized by law as a separate entity or person." (Id. (emphasis added).) He goes on to explain that "there are only three parties to the agreement, PSEC, Melwani, and Melwani's company, Pacific-Tri-Star." (Id. (emphasis added).) These statements confirm that Plaintiff understood the legal effect of the documents he signed: that PSEC, not Plaintiff himself, had entered into the profit-sharing agreement with Melwani.

It is clear, therefore, that PSEC, rather than Plaintiff personally, is the real party in interest in this action for breach of the profit-sharing agreement. As Plaintiff has acknowledged—and even argued—PSEC was a party to the agreement; he was not. (See doc. # 19, exs. A, E.) Since the suit is one to enforce

60

a claim belonging to PSEC, PSEC is the real party in interest and a necessary party.  Meyer v. Fleming, 327 U.S. 161, 167 (1946).  While Plaintiff, acting through PSEC's Board of Directors, could have brought this suit in PSEC's name, he does not have standing to bring a personal claim for PSEC's alleged injuries.

Ordinarily a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until . . . reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3).  To do so in this case would be futile, however; once PSEC is joined, diversity is destroyed, and this Court would have no jurisdiction over Plaintiff's claims.  See Allstate Ins. Co., 358 F.3d at 1095 ("In the absence of diversity of citizenship of the real parties in interest, the district court did not have subject matter jurisdiction and should have dismissed the action.").  This Court therefore has no choice but to dismiss Plaintiff's claims against the Melwani Defendants.

C.    Failure to State a Claim

Defendants argue that Plaintiff's allegations against the Melwanis, Teker, and Kutz are insufficiently pled and are time-barred.  Defendants also argue that Plaintiff's arguments regarding Kutz's failure to notify Plaintiff of a motion

hearing in the proceedings to affirm the arbitration award were already rejected by the Guam Supreme Court. Again, for the reasons provided in part A, Plaintiff has not demonstrated by a preponderance of the evidence that this court has diversity jurisdiction over his claims against the Melwani Defendants. In an abundance of caution, however, the Court will also address the Melwani Defendants' final argument for dismissal. For the reasons that follow, the Court finds that Plaintiff fails to state a claim against any of the Melwani Defendants.

### 1.  The Melwanis and Defendant Teker

Plaintiff alleges that he signed a profit-sharing agreement on behalf of PSEC with Melwani and Melwani's company, Pacific Tri-Star, in relation to the GHURA project. (Doc. # 124 at 5.) Plaintiff alleges that neither Melwani nor Tri-Star paid Plaintiff for various services and that PSEC never received its profit share because of "fraudulent accounting" by Anita and Manu Melwani. (Id.) Plaintiff also alleges that Melwani collected on PSEC's payment checks from GHURA via Melwani's other company, PATICO (id. at 7), and that Melwani was part of a "conspiracy to perpetrate fraud upon the court (the interpleader)" (id. at 31).

Plaintiff alleges that Melwani's attorney, Lawrence Teker, falsely

alleged to GHURA that Melwani was surety for PSEC and that Melwani took over PSEC's projects after a "falsely alleged default of PSEC."  (Id. at 7–8.)  Plaintiff also alleges that Teker conspired with Melwani's other attorney to "affect [sic] the prejudgment attachment cloaked as a sham interpleader."  (Id. at 27.)

Federal Rule of Civil Procedure 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  However, Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  Further, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Id. (internal quotation marks omitted).

Under Ninth Circuit law, there are heightened pleading requirements for allegations of fraud: "Rule 9(b) requires particularized allegations of the circumstances constituting fraud."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded on other grounds by 15 U.S.C. § 78u-4.  In other words, fraud claims must be accompanied by the "who, what, when, where, and how" of the fraudulent conduct charged. Vess v. Ciba-Geigy

Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003). "[M]ere conclusory allegations of fraud are insufficient" to satisfy this requirement. In re GlenFed, 42 F.3d at 1548 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)). Instead, a pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).

Although Plaintiff has made allegations of conspiracy and fraud against the Melwanis and Teker, here, as in the FAC, the he fails to allege facts explaining the "what, when, where, and how" of the fraudulent conduct. See Vess, 317 F.3d at 1106. While Plaintiff alleges that "fraudulent accounting" by the Melwanis prevented PSEC from receiving "its 50% share of the profits on the Tri-star contract" (doc. # 124 at 5), he alleges no facts that could explain when this accounting took place or even how the Melwanis could have "cooked the books" to completely prevent PSEC from receiving hundreds of thousands of dollars to which it was otherwise entitled.

Plaintiff's other claims fare no better. For example, Plaintiff's

allegation that Melwani was part of a "conspiracy to perpetrate fraud upon the court (the interpleader)" (id. at 31) is accompanied by no facts that might plausibly suggest that the interpleader was actually fraudulent or that any grounds exist to permit this Court to revisit the decisions of the Superior and Supreme Courts of Guam. See Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted). Particularly in light of Rule 9(b)'s heightened pleading requirements for allegations of fraud, this claim cannot survive a motion to dismiss.

Plaintiff's claims against Defendant Teker, little more than conclusory allegations that he conspired to "affect [sic] the prejudgment attachment cloaked as a sham interpleader" (id. at 27), must fail for the same reason. The Melwanis and Defendant Teker would be unable to prepare an adequate answer from these allegations. See Moore, 885 F.2d at 540 ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."). Accordingly, Plaintiff's claims against

65

the Melwanis and Defendant Teker must be dismissed for failure to state a claim.

2.    Defendant Kutz

Plaintiff alleges that Kutz "had a previous relationship" with Lance Inouye, the arbitrator.  (Doc. # 124 at 23.)  However, Plaintiff does not allege any other facts concerning the nature of this "relationship"; nor does he allege that the "relationship" created some sort of conflict of interest.

Plaintiff also alleges that Defendant Kutz deliberately failed to notify Plaintiff of a motion hearing date, which led to a default judgment against Plaintiff. (Doc. # 124 at 23, 25–26.)  As the Melwani Defenants correctly point out, however, Plaintiff made precisely the same arguments before the Guam Supreme Court in Melwani v. Arnold, 2010 Guam 7, and the Supreme Court rejected them; it held that Plaintiff had, indeed, received adequate notice of the proceedings to confirm the arbitration award.  Once again, the Rooker-Feldman doctrine "bars 'state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced' from asking district courts to review and reject those judgments." Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007) (quoting Exxon Mobile Corp. v. Saudi Basic Indus.

Corp., 544 U.S. 280, 284 (2005)).  This Court will not revisit the Guam Supreme

Court's decision.[18]

For these reasons, Plaintiff's claims against Defendant Kutz must also

be dismissed.

3.     PATICO and Tri-Star

Defendants argue that Plaintiff's claims against PATICO and Tri-Star

should be dismissed because he improperly added them as defendants in the SAC

without leave of court and did not serve them with the SAC within 120 days of

filing the SAC.  (Doc. # 155 at 10.)  Defendants also argue that Plaintiff's

allegations against PATICO and Tri-Star are insufficiently pled and that any causes

of action are barred by Guam's three- and five-year statutes of limitations.

Because the Court finds that Plaintiff's allegations against PATICO and Tri-Star

are barred by Guam's statutes of limitations, it does not address Defendants' other

arguments.

---

[18] Plaintiff's allegation that Kutz "perpetrated a fraud upon the Superior
Court marshals to seize $428,000.00 of PSEC's money wrongly installed in the
court's registry by GHURA" (doc. # 124 at 31) seems to be making the same
claim.  Plaintiff seems to be alleging that Defendant Kutz obtained the default
judgment entered against Plaintiff by fraudulently failing to notify Plaintiff of the
hearing.

Plaintiff's claims against PATICO and Tri-Star are scattered throughout the SAC and difficult to discern. Plaintiff seems to allege that Tri-Star breached a contract with Plaintiff by failing to pay plaintiff "any salary for his services of bidding on the project, ordering materials, and supervising the . . . project . . . ." (Doc. # 124 at 5.) However, Plaintiff does not indicate which contract entitled him to such a salary; as described above, the profit-sharing agreement did not afford Plaintiff any benefits in his personal capacity. Plaintiff also alleges that Tri-Star, through PATICO, fraudulently collected $289,322.00 for work performed solely by PSEC. (Id. at 6.)

Under Guam law, the only civil action for which there is no statute of limitation is an action "brought to recover money or other property deposited with any bank, banker, trust company, building and loan association, or savings and loan society . . . ." 11 Guam Code § 11317. Plaintiff's claims against PATICO and Tri-Star plainly do not fall within this provision. The statute of limitations on actions regarding patent or latent deficiencies in improvements to real estate is ten years. 11 Guam Code §§ 11309, 11310. Again, Plaintiff's claims, as difficult as they are to discern, do not fall within these provisions.

68

All other civil actions not involving real property have statutes of limitations of <u>five years or less.  See</u> <u>id.</u> §§ 11301–11317.  Thus, while it is difficult to discern precisely which causes of action Plaintiff believes he has against PATICO and Tri-Star, his claims are time-barred if they accrued more than five years before Plaintiff added them to the SAC in February of 2012.

On this issue there can be little debate: all the acts of which Plaintiff complains complained occurred over a decade before PATICO and Tri-Star were added to the SAC.  (<u>See</u> doc. # 124.)  While statutes of limitation may be tolled in certain situations, <u>see, e.g.</u>, 11 Guam Code § 11404 (tolling the statute of limitations while plaintiff is, <u>inter alia</u>, a minor or insane), Plaintiff has cited no facts that would support a finding that the applicable statute of limitations was tolled.  Instead, Plaintiff's numerous filings in this Court and the Guam Superior Court make clear that this federal action is an attempt to re-litigate claims of which he has had personal knowledge, and which have formed the subject matter of litigation between himself and the Melwanis, since 1994.  Accordingly, Plaintiff's claims against PATICO and Tri-Star are dismissed as time-barred.

III.    Motion to Declare Plaintiff a Vexatious Litigant

The Guam Judiciary Defendants move this Court to declare Plaintiff a vexatious litigant and enter a pre-filing review order.  (Doc. # 135.)

In opposition, Plaintiff asserts that his filings in the instant action do not rise to the level warranting a vexatious litigant order and suggests that the Court follow California's vexatious litigant statute.  (Doc. # 145 at 3.)  Plaintiff contends that the Judiciary Defendants have "continuously tortured, abused, and harassed [Plaintiff] by forcing him to play legal patty cakes with Melwani for the last 16 years while unconstitutionally detaining his money."  (Id. at 5.)

A vexatious litigant is one with a history of abuses of the judicial process.  See De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990).  To prevent the continued abuses, federal courts have been granted inherent authority to regulate the activities of vexatious litigants through the imposition of carefully tailored restrictions under appropriate circumstances, such as a pre-filing order pursuant to 28 U.S.C. § 1651(a).  See id.  Such restrictions, however, should be used sparingly and only under extreme circumstances.  See Hennessey, 912 F.2d at 1147.  Accordingly, the Ninth Circuit has set forth the following guidelines before

70

entering a pre-filing order: (1) adequate notice to the plaintiff to oppose a restrictive pre-filing order before it is entered; (2) presentation by the trial court of an adequate record for review; (3) substantive findings concerning the frivolous or harassing nature of the plaintiff's filings; and (4) a narrow tailoring of the order to remedy the abuses. See id. at 1147–48.

A. Notice

As to the first factor, Plaintiff had notice that the Court was considering the Judiciary Defendants' request for an order declaring him a vexatious litigant. Plaintiff was afforded the opportunity to be heard through his memorandum in opposition as well as his arguments at the hearing.

B. Record for Review

The Court now sets forth the numerous filings Plaintiff has made in the instant action:

- On April 13, 2010, while motions to dismiss Plaintiff's FAC were pending, Plaintiff moved for partial summary judgment. (Doc. # 39.) The court set a hearing on the motions for dismissal and summary judgment.
- On March 24, 2010, Plaintiff moved to recuse Chief Judge Tydingco-Gatewood (doc. # 25), which Tydingco-Gatewood denied (doc. # 44).
- On June 18, 2010, Plaintiff moved for reconsideration and to "correct

the court's factual background" in the order denying recusal, in which Plaintiff claimed: (1) PSEC never abandoned its projects; (2) GHURA never defaulted PSEC on any of its projects; (3) Defendant Manu Melwani never took over or completed PSEC's projects; (4) defendant Melwani never hired Tri-Star to complete PSEC's projects; (5) GHURA never informed Melwani that PSEC was in default on the contracts[;] and (6) GHURA never informed Melwani that his bond would be forfeited." (Doc. # 46 at 27.) On August 4, 2010, the court denied Plaintiff's motion to reconsider.

- On August 6, 2010, Plaintiff filed a Motion for Judicial Ethics Inquiry Against the Superior Court of Guam. (Doc. # 59.) The Court denied the motion. (Doc. # 60.)

- On September 3, 2010, Plaintiff appealed the recusal decision to the Ninth Circuit (doc. # 62), which dismissed the appeal for lack of jurisdiction. (Doc. # 69.)

- On November 3, 2010, Plaintiff filed further motions for partial summary judgment. (Docs. ## 71–72.)

- On November 4, 2010, Plaintiff filed "Agreement to Superior and Supreme Court's to Proposal to Discussion with a Neutral Judge." (Doc. # 73.)

- On December 22, 2010, Plaintiff filed a Motion for Order to the Superior Court of Guam to Release Prejudgment Attachment to Enable Plaintiff to Retain Counsel. (Doc. # 82.)

- On March 31, 2011, Plaintiff filed a Motion to Vacate Certain Orders, Judgments, and Opinions of the Superior and Supreme Courts of Guam. (Doc. # 91.) On March 31, 2011, the Court dismissed Plaintiff's claims in his FAC and granted him leave to amend as to certain counts. (Doc. # 92.)

- On April 27, 2011, Plaintiff filed three motions: (1) a Motion for Reconsideration; (2) a Motion to Vacate Certain Orders, Judgments and Opinions of the Superior and Supreme Courts; and (3) a Motion

72

to Vacate Judgments of the Superior Court in SP 0057-07 and Affirming Opinions of the Supreme Court of Guam Under FRCP Rule 60(b)(4). (Docs. ## 98–100.)

- On May 5, 2011, Plaintiff filed: (1) a Notice of Constitutional Question Under FRCP Rule 5.1; (2) a Motion for Order and Stipulation of Service by Electronic Means; and declarations regarding his Motion to Vacate Judgments and Motion for Reconsideration. (Docs. ## 101–104.) The Court denied Plaintiff's motions on August 31, 2011. (Doc. # 112.)

- On October 14, 2011, Plaintiff filed a second Motion for Reconsideration of the Court's March 31, 2011 Order dismissing Count III with prejudice. (Doc. # 114.) The motion also sought reconsideration of the Court's August 31, 2011 dismissal of Plaintiff's constitutional question. (Id.)

- On January 27, 2012, Plaintiff filed a Motion for Reconsideration of the Court's August 31, 2011 Order denying his Motion for Reconsideration as to the Court's dismissal of Count III of the FAC with prejudice (doc. # 98) and denying Plaintiff's two Motions to Vacate various judgments of the Superior and Supreme Courts of Guam (docs. ## 99, 100). (Doc. # 123.)

- On February 10, 2012, Plaintiff filed the SAC adding, among other defendants, the Guam Judiciary Defendants. (Doc. # 124.)

- On August 31, 2012, Plaintiff filed a Motion to Vacate the Court's August 31, 2011 Order. (Doc. # 164.) On September 20, 2012, this Court issued an Order: (1) Denying Plaintiff's Motions for Reconsideration (docs. ## 114, 123) and (2) Denying Plaintiff's Motion to Vacate (doc. # 164).

- On October 16, 2012, three days before the Court's scheduled hearing on the Guam Judiciary Defendants' and Melwani Defendants' motions, Plaintiff filed a Notice of Appeal as to the Court's September 20, 2012 (doc. # 179) and a Motion to Stay Proceedings Pending Appeal (doc. # 180).

- On October 22, 2012, Plaintiff filed an Amended Notice of Appeal (doc. # 184) and a Request to the Ninth Circuit Court of Appeals for Appointment of Pro Bono Counsel to Brief and Argue Appeal (doc. # 185). On November 8, 2012, the Ninth Circuit dismissed Plaintiff's appeal for lack of jurisdiction (doc. # 188).

- On October 29, 2012, Plaintiff filed a Motion for Extension of Time to File Supporting Documents in Opposition to Motion to Dismiss (doc. # 187), which this Court granted on November 8, 2012 (doc. 189).

- On November 27, 2012, Plaintiff filed a Notice of Intent to File Motion for Partial Summary Judgment (doc. # 190).

- On January 3, 2013, Plaintiff filed a Notification and Certificate of Service indicating that he planned to file a motion for partial summary judgment on or before January 15, 2013.

C.  Frivolous or Harassing Filings

The third factor requires substantive findings concerning the frivolous or harassing nature of the plaintiff's filings. "To determine whether a litigant's actions are frivolous or harassing, the district court must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims." Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1059 (9th Cir. 2007) (citations and quotation marks omitted). "An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit." Id. "It is also frivolous for a claimant who has some

74

measure of a legitimate claim to make false factual assertions." <u>Molski</u>, 500 F.3d 1047, 1060 (9th Cir. 2007). A person "may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." <u>Id.</u> at 1062.

In the instant case, the Court finds that there is a sufficient basis to conclude that Plaintiff's litigation against the Judiciary has been abusive and frivolous. The record is replete with orders by this court and others discussing the meritless nature of plaintiff's claims, as well as his numerous problematic filings and questionable litigation tactics.

Over and over again during the course of this litigation, Plaintiff has attempted to re-litigate matters the Court has decided and disobeyed the Court's instructions regarding his filings. For example, Plaintiff moved to recuse Chief Judge Tydingco-Gatewood in this case. (<u>See</u> doc. #25.) When the Chief Judge denied his motion, Plaintiff moved, repeatedly, for reconsideration (<u>see</u> docs. ## 46, 59). When these motions were denied, Plaintiff appealed to the Ninth Circuit despite that court's complete lack of jurisdiction. (Docs. ## 62, 69.) Displeased with the courts' rulings, Plaintiff then amended his complaint, which had already been dismissed with prejudice as to the Guam courts (and reconsideration of which

had already been denied, see doc. # 112), to add Chief Judge Tydingco-Gatewood

as a defendant (see docs. ## 1, 124), forcing her to recuse herself (see doc. # 126).

Similarly, upon dismissing Plaintiff's First Amended Complaint, this

Court stated that the local courts of Guam were immune from suit for their actions

on the bench. (See doc. # 92 at 6.) The Court's Order also held that the Rooker-

Feldman doctrine forbade Plaintiff's "de facto appeal from the decisions of

Guam's Superior and Supreme Courts." (Id. at 5.) The order made plain that

Arnold's claims against the current and former judicial officers were not

meritorious and permitted Plaintiff to amend his complaint only as to the fraud

claims against the Melwani Defendants. (Id. at 6–7.) Nevertheless, Plaintiff

amended the complaint to add twenty-four new defendants, including ten Does of

the Superior Court of Guam. (See doc. # 124.) Eleven of the new defendants are

or were judicial parties who, like the courts, are immune from suit. By improperly

amending his complaint, Plaintiff has embroiled the Judiciary Defendants in

unnecessary litigation.

Even were these defendants not immune from suit as members of the

judiciary, Plaintiff's theories of liability are highly implausible as a matter of fact.

76

Plaintiff has repeatedly alleged some form of conspiracy among the Judiciary

Defendants to "swindle" him out of his life savings (see, e.g., doc # 162 at 14; doc.

# 190 at 3), but he presents only conclusory claims, with no plausible factual

allegations to support them. See, e.g., doc. # 1 at 3 (accusing the Judiciary

Defendants of "fail[ing] to properly rule concerning the contract signed by plaintiff

and Manu Melwani and . . . abus[ing] their discretionary power to delay and

deprive plaintiff of his money"); Pl.'s Opp'n to Melwani Defs.' Mot. to Dismiss,

doc. # 162 at 14 (claiming that "the sham interpleader was fraud upon the court"

and alleging "[a] 17 year conspiracy of fraud upon the court between the Melwani

defendants and the judiciary defendants only to swindle Arnold out of his life's

savings for the benefit and protection of Melwani, GHURA, and Citibank"); SAC

at 2, 19 (claiming that "[t]he local courts have merely carried on the conspiracy of

economic oppression by purposely issuing void judgments"; that "Judge Bordallo

purposely misconstrued the . . . profit sharing agreement to continue to oppress

Arnold and subvert and delay justice on the sham interpleader"; and that the Guam

Supreme Court "metaphysically transformed Tri-[S]tar into Melwani to give

credence to a farce equitable subrogation defense and the [Court] knew it was a

farce"); Notice of Intent to File Mot. for Partial Summ. J., doc. # 190 at 4 (claiming that the Judiciary Defendants engaged in a "conspiracy of involuntary servitude against PSEC and Arnold because . . . it was their intent to see to it that PSEC and Arnold never to [sic] get paid for their hard work . . . .").  He has repeatedly and unwarrantedly referred to the instant case as a "sham litigation," to the interpleader as a "sham interpleader," and to the arbitration before the American Arbitration Association as a "scam arbitration" (see, e.g., doc. # 124 at 3; doc. # 145 at 3, 8; doc # 162 at 13, 14).

   This is just a small sampling of Plaintiff's unsupported accusations against the Judiciary Defendants and his frivolous attempts to overturn decisions rendered against him.  For years, Plaintiff has wasted the Court's and the Judiciary Defendants' time and money attempting to re-litigate claims that this Court and others have already rejected.  Given Plaintiff's numerous meritless filings, coupled with the tone and form of those filings, Plaintiff has crossed the line from permissible use of the judicial process to flagrant abuse.

  D. Narrow Tailoring of the Order

   Plaintiff's long history of filing meritless claims against the Judiciary

Defendants suggests that he will continue such abuse in the absence of an injunction. Accordingly, Plaintiff is hereby enjoined from filing any complaint, motion, or other document in the District Court of Guam against any of the former or current judicial defendants named in this case unless and until such a filing is first approved by this Court. If Plaintiff wishes to file such a document, the Court hereby orders him to submit a copy of the proposed filing, a letter requesting that the document be filed, and a copy of the pre-filing review order to the clerk of court. The clerk shall then forward the letter, document, and copy of the order to the reviewing judge for a determination of whether the document should be accepted for filing. Cf. Hilsenrath v. Credit Suisse (CS), slip op., No. C 08-80005 MISC WHA, 2008 WL 344212 at * 5 (N.D. Cal. Feb. 6, 2008) (outlining terms of pre-filing review order). Any document filed in defiance of this order shall be dismissed.

In deciding whether to allow Plaintiff to proceed with any new action, the Court will consider whether the new action raises any issues that could have been raised in any of the previous actions. The Court may, in its discretion, require that Plaintiff post a bond in the amount of the fees and costs that the defendants

will likely incur in defending against the action.  If the Judiciary Defendants

prevail in the action, they will be entitled to be compensated out of this bond for

the fees and costs incurred in defending against Plaintiff's action, notwithstanding

any other provisions of the state or federal law limiting the right to recover

attorneys' fees and costs.

   For a pre-filing order to survive appellate scrutiny, the order must be

narrowly tailored to prevent the harm committed from reoccurring and to avoid an

unnecessary infringement upon a litigant's access to the courts.  <u>De Long</u>, 912 F.2d

at 1148.  This Order merely subjects Plaintiff's filings against particular

defendants—the Judiciary Defendants—to an initial review by the Court.  <u>See</u>

<u>Molski</u>, 500 F.3d at 1061 ("The order is narrowly tailored because it will not deny

Molski from filing any ADA complaints; it merely subjects Molski's complaints to

an initial screening review by a district judge.").  It does not interfere with

Plaintiff's ability to initiate non-frivolous actions against the Judiciary Defendants,

to initiate actions against other defendants, or to remove other state-court litigation.

<u>See</u> <u>id.</u> ("The order is narrowly tailored because it will not deny [the plaintiff]

access to courts on any . . . claim that is not frivolous . . . .").

The Ninth Circuit has stated that courts have an affirmative obligation to "ensure that judicial resources are not needlessly squandered on repeated attempts by litigants to misuse the courts. Frivolous and harassing claims crowd out legitimate ones and need not be tolerated repeatedly by the district courts." O'Loughlin v. Doe, 920 F.2d 614, 618 (9th Cir. 1990). Plaintiff's duplicative filings have wasted the Judiciary Defendants' time and money as well as the Court's limited resources. The Court therefore grants the Judiciary Defendants' Motion to Declare Plaintiff a Vexatious Litigant.

CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion to Dismiss Plaintiff's claims against the Judiciary Defendants; **GRANTS** the Motion to Dismiss Plaintiff's claims against the Melwani Defendants; and **GRANTS** the Judiciary Defendants' request for an Order Declaring Plaintiff a Vexatious Litigant.

Plaintiff Richard T. Arnold is hereby **ORDERED** to submit any filing that names any of the former or current judicial defendants in this case to the clerk of court for pre-filing review as described in Part III.D. of this Order. This Order

shall in no way be construed as precluding Plaintiff from filing an appeal of this

Court's Order to the Ninth Circuit or from seeking any other relief from that court.


IT IS SO ORDERED.

Dated:  San Antonio, Texas, January 9, 2013.

_____
David Alan Ezra
Senior United States District Judge